JACOB GENNET, RESPONDENT, v. LEHIGH VALLEY RAIL-
ROAD COMPANY, APPELLANT.

Submitted March 27, 1922—Decided June 19, 1922.

Defendant delivered to plaintiff a shipment of freight which had come
in a sealed car from Georgia over the lines of several connecting
carriers. The goods were found to be damaged, but plaintiff re-
ceived them on the assurance from some employe of the defend-
ant not named but described as "the head man who had charge
over the cars" at the Newark freight station, that if plaintiff
would receive and remove the goods the company would pay for
the damage. *Held*, that there was no proof that such employe
had any authority to make such a contract and that plaintiff in
the absence of such proof could not recover thereon.

On appeal from the Supreme Court.

For the appellant, *George S. Hobart* and *Ralph E. Cooper*.

For the respondent, *Nathan H. Berger*.

The opinion of the court was delivered by

PARKER, J. The suit was for damage to certain bales or
packages of "hull shavings" (which seem to be an inferior
grade of cotton), shipped from Augusta, Georgia, to plaintiff
at Newark, New Jersey, over several lines of connecting rail-
roads, the delivery having been made by defendant as the
final carrier. On opening the sealed car the goods were found
to be damaged; but after some communication, principally
by telephone, between plaintiff and the freight station,
plaintiff accepted the goods and used them. His complaint
in the suit was originally in one count, charging defendant
with the alleged duty to place the goods in a proper car
and care for them properly *en route* so as to deliver in good
order. There was no proof to establish any liability under
this count, and as we read respondent's brief, it is not relied
on. The second count, introduced by amendment at the trial,

charged that on the date of delivery "defendant agreed with plaintiff, that if plaintiff would unload and remove said shipment of hull shavings, defendant would pay to plaintiff such damages as plaintiff would suffer because of the damaged condition of said hull shavings. Plaintiff, relying thereon, did remove said hull shavings."

It will be observed that under this count the case to be made out in order to justify a recovery is that the defendant company, in consideration of having the consignment accepted and removed, made a special agreement to answer for the damage, whether originally liable for it or not. There is of course no intimation that such agreement was made in any other way than through an agent; and the crux of the case is whether there was any evidence of the authority of the alleged agent to go to the jury. The Supreme Court, which heard the case on appeal from the District Court, held that there was such evidence; but we find ourselves unable to concur in this ruling. The freight bill, on what appears to be a regular company form, was put in evidence, and contains the recital "contents of car black from coal;" which of course is no more than a statement of the condition of the shipment. Plaintiff's driver testified that the word "damaged" (probably meaning this clause) was put on the paper before he received it; that he could not remember who the man was that gave it to him; "it was the head man who had charge over the cars." That he took the first load to "the boss" (plaintiff), who sent him back with it and he told them the boss did not want it because it was damaged and they called the boss up. That "the man" told witness that the railroad company would stand all damage on lintals and had him take it back. That the bill was marked "damaged" in the "main office there." Plaintiff himself corroborated this witness as to seeing the condition of the first load and sending it back, and being called on the telephone from the Lehigh Valley office. As he could not say to whom he talked on the telephone the conversation was excluded; that after this conversation he "told them to

unload the car and bring it over and sign the slip 'damaged;' " also that he made an affidavit and "a man came over to look at the stuff."

This is the sum total of the evidence to show authority to make the contract set up in the second count; and when examined it utterly fails to supply any evidence of authority to make the contract set up in the complaint. The only individual identified in any way as acting for the defendant is "the head man who had charge over the cars;" and this description seems to point out a yardmaster as reliably as anyone else. But whether he was a yardmaster, or chief clerk in the freight office, or what not, the rule holds good that any act that he undertook to do for the corporation, in order to bind it, should appear to be within the actual or at least apparent scope of his authority. There is nothing to show that this anonymous individual either had, or appeared to have, *virtute officii* or by any course of holding out by the corporation, any authority whatever to settle claims for damages to freight or make any contracts in relation thereto. We think it is a matter of common knowledge, certainly in the business world, that the audit and settlement of such claims is not ordinarily entrusted to local agents.

The multitude of decisions on this subject of the powers of agents of corporations is so great that we must content ourselves with citing a few of the latest deliverances of this court, which point to the result now reached in this case:

*Murphy* v. *W. H. & F. W. Cane*, 82 *N. J. L.* 557, where on a second trial the corporate minutes were held to supply evidence of authority previously lacking; *Hall* v. *Passaic Water Co.*, 83 *Id.* 771, a case of a superintendent making an unusual contract; *E. Clemons Horst Co.* v. *Peter Breidt City Brewery*, 94 *Id.* 230; 109 *Atl. Rep.* 727, corporate contract modified by salesman; *Interstate Chemical Co.* v. *James Leo Co.*, 94 *N. J. L.* 513, 110 *Atl. Rep.* 903, alteration of contract by sales manager; *Aerial League of America* v. *Aircraft Fireproofing Corporation, post p.* 530.

The judgment under review will be reversed and the record remitted to the end that the Supreme Court direct that a *venire de novo* be awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, PARKER, BERGEN, MINTURN, WHITE, HEPPEN-HEIMER, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK, JJ. 12.